IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| VAUGHN AVERY,<br><br>          Petitioner,<br><br>vs.<br><br>HAROLD D. GRAHAM, Superintendent,<br>Auburn Correctional Facility,<br><br>          Respondent. | No. 9:12-cv-01347-JKS<br><br>MEMORANDUM DECISION |

Vaughn Avery, a New York state prisoner proceeding *pro se*, filed a Petition for a Writ

of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254.  Avery is currently in the

custody of the New York State Department of Corrections and Community Supervision and is

incarcerated at Auburn Correctional Facility.  Respondent has answered, and Avery has replied.

## I. BACKGROUND/PRIOR PROCEEDINGS

On July 26, 1996, Avery was charged with one count of second-degree murder based on

a felony murder theory, two counts of first-degree attempted robbery under two different legal

theories, and one count of fourth-degree criminal possession of stolen property in connection

with the killing of a grocery store clerk.  On direct appeal of his conviction, the Appellate

Division summarized the following facts underlying the indictment:

> On an evening in 1996, [Avery], Jason Clark and Antonio Spears gathered near a
> grocery store in the City of Albany.  They encountered an acquaintance of Spears who
> answered some questions about the store after exiting.  After the acquaintance left the
> area, [Avery] and Clark, armed with handguns, entered the store.  The store owner was
> stocking shelves and the victim was working at the front counter.  The owner testified
> that he heard two shots, looked up, and saw two men with covered faces standing near
> the store entrance, one of whom was holding a gun.  He threw jars at the men and they
> fled. A resident of an upstairs apartment heard the shots, ran downstairs and saw two men
> fleeing on foot.  The victim had been fatally shot by Clark.  The next morning police

went to the home of Clark and [Avery] and placed both men in custody. Clark directed police to two handguns concealed in his bedroom.

*People v. Avery*, 915 N.Y.S.2d 356, 357-58 (N.Y. App. Div. 2011).

Clark pled guilty to all but one count of an eight-count indictment and inculpated both Avery and Spears in his plea allocution. Spears was tried separately and acquitted of felony murder and attempted robbery in connection with the grocery store incident, but admitted and was convicted of an unrelated gun store robbery.

Avery proceeded to jury trial in May 1997. After the conclusion of the People's case-in-chief, Avery moved to dismiss all counts in the indictment for failing to present legally sufficient evidence to the jury. The court denied the motion in its entirety after the conclusion of the defense's case and submitted to the jury each count of the indictment relating to Avery. The jury found Avery guilty of second-degree murder (felony murder) and two counts of first-degree attempted robbery. The jury acquitted him of the criminal possession of stolen property charge.

On July 30, 1997, the court sentenced Avery to an imprisonment term of 25 years to life for the felony murder conviction. The court also sentenced him to two 7½-to-15-year indeterminate prison sentences for the attempted robbery convictions.

Over a decade later, Avery, proceeding through new counsel, moved to vacate the judgment pursuant to New York Criminal Procedure Law ("CPL") § 440.10, arguing that trial counsel was ineffective because he failed to: 1) conduct a reasonable pre-trial investigation; 2) interview and call Spears as an alibi witness; 3) investigate whether the acquaintance, who testified for the prosecution, committed perjury based on bias against Spears; 4) investigate Gloria Aleman, an eyewitness who testified for the prosecution and who Avery claimed later recanted her trial testimony; 5) interview the owner of the grocery store who Avery alleged

stated in a later interview that there had only been one robber; 6) interview Clark and Spear's girlfriend which, according to Avery, would have revealed that Clark's statements to the police and during his plea allocution were not truthful; and 7) call an expert witness on cross-racial identification.

At an evidentiary hearing on the matter, Clark testified that he was by himself when he shot and killed the grocery store clerk. Clark acknowledged that his version of events contradicted his trial testimony and prior statements he made to the police and at his plea allocution. He testified that, at the time of the murder, he was sixteen years old and scared and that his attorney told him that his statement at the plea allocution had to match the statement he had given to police. Clark further denied discussing with Avery a plan to rob the store. On cross-examination, Clark stated that Avery could have been in the store at the time of the shooting but that Clark did not see him. The prosecutor also impeached Clark with his testimony from the plea allocution in which Clark stated that he and Avery had both entered the grocery store with guns drawn and that all three men had discussed the robbery and planned to split any proceeds equally.

Gloria Aleman testified with the assistance of an interpreter and noted that she did not have an interpeter at trial. She rated her English as a "0" at the time of the trial and stated that her English was "a little better" at the evidentiary hearing. She testified that she was watching television with her boyfriend's children when she heard what sounded like firecrackers. She went to the bedroom where her boyfriend was sleeping, and he told her that the sound was gunshots. Her boyfriend went down to see what had happened and told Aleman to stay in the

apartment. She went down four steps of the staircase outside their apartment and saw two young men holding the door to the grocery store open and then running away.

The grocery store owner testified that, on the night of the shooting, he heard shots and saw one person at the door. He then began throwing what was in his hands. On cross-examination, he testified that he did not remember if he saw one person or two people in the store and acknowledged that he testified at trial that he had seen two guys near the entrance of the store.

A private investigator also testified that he met with Aleman on April 26, 2004. He opined that, based on his conversation with Aleman and the layout of her apartment, it would have taken approximately 35 to 45 seconds for Aleman and her boyfriend to go downstairs after hearing the gunshots.

Avery submitted a counseled post-hearing memorandum of law arguing that: 1) Clark's recantation of his police statements, plea allocution, and trial testimony was newly-discovered evidence warranting a new trial; 2) Aleman's trial testimony was unrealiable because, without an interpreter, she could not have understood the questions she had been asked; 3) Aleman's hearing testimony showed that the two boys that she saw running away from the grocery store could not have been Avery and Clark; 4) Aleman's 2004 affidavit, which was obtained in the presence of the private investigator, was not tainted because she had not received information about the case before providing the affidavit; 5) the hearing evidence suggested a likelihood of police fabrication; 6) the verdict would have been different if the jury had heard the newly-discovered evidence; and 7) trial counsel's ineffectiveness caused prejudice to Avery.

On December 4, 2009, the court denied the motion in its entirety. The court concluded that Aleman did not recant her trial testimony but rather "confirmed the critical elements of her trial testimony, namely that after hearing shots or firecrackers, she came downstairs and witnessed two males running from the grocery store." The court likewise held that a review of the trial transcript demonstrated that Aleman understood and appropriately responded to the questions posed at trial and that the hearing testimony, with the assistance of an interpreter, confirmed the trial testimony. In finding no issue with Aleman's comprehension of the English language, the court found it significant that the investigator interviewed Aleman in English and without the assistance of an interpreter and that Aleman's affidavit was in English. The court also found Clark's hearing testimony not credible and thus rejected it. The court likewise rejected Avery's ineffective assistance of counsel claim, holding that trial counsel's performance as a whole demonstrated meaningful assistance of counsel and thus satisfied the constitutional requirements. The court rejected all remaining contentions.

Again proceeding through counsel, Avery appealed his conviction, arguing that: 1) the evidence at trial was legally insufficient to support the conviction; 2) the trial court erred by failing to convey jury instructions with the appropriate legal standard; 3) the prosecution violated Avery's confrontation rights by failing to provide an interpreter for Aleman; 4) the prosecution violated their *Brady*[1] obligations by failing to disclose to the defense that Aleman had requested an interpreter for trial; 5) the prosecution violated *Brady* by failing to disclose a police statement made by Aleman; 6) the § 440 court erred in rejecting Clark's testimony; 7) trial counsel was

---

[1]     *Brady v. Maryland*, 373 U.S. 83 (1963). The term "*Brady*" is a shorthand reference to the rules of mandatory discovery in criminal cases under federal law.

ineffective for failing to conduct reasonable investigations and to interview an alibi witness; 8) the prosecution's weak identification evidence failed to identify Avery; 9) the police fabricated statements attributed to Clark, Spears, Avery, and Aleman; 10) the verdict would have been different had the jury heard the newly-discovered evidence; and 11) trial counsel's "multiple failures" prejudiced Avery.

The Appellate Division unanimously affirmed the judgment against Avery in a reasoned opinion. *Avery*, 915 N.Y.S.2d at 362. Avery filed a counseled leave application in the Court of Appeals, raising the following claims: 1) counsel was ineffective for failing to preserve the legal sufficiency claim and the evidence was legally insufficient to support the conviction; 2) the jury instructions were improper; 3) the prosecution withheld Aleman's written statement to the police; 4) the prosecution failed to disclose Aleman's request for an interpreter; 5) police fabrication of witness statements violated Avery's constitutional rights; 6) Avery received the ineffective assistance of trial counsel; and 7) the cumulative effect of the trial errors deprived Avery of a fair trial. The Court of Appeals summarily denied the leave request on June 7, 2011. *People v. Avery*, 17 N.Y.3d 791 (N.Y. 2011).

Avery timely filed a Petition for a Writ of Habeas Corpus to this Court on August 27, 2012. He subsequently filed an Amended Petition.

## II. GROUNDS RAISED

In his *pro se* Amended Petition before this Court, Avery raises four claims for relief. First, he contends that trial counsel was ineffective for failing to investigate and call certain witnesses. He additionally contends that the evidence was legally insufficient to sustain his robbery and felony murder convictions. Third, he claims that he was denied *Brady* material

which deprived him of a fair trial.  Finally, he asserts that the court's ruling on his CPL § 440.10 motion was objectively unreasonable.

III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002). Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Jones v. Stinson*, 229 F.3d 112, 118 (2d Cir. 2000). Where there is no reasoned decision of the state court addressing the ground or grounds raised on the merits and no independent state grounds exist for not addressing those grounds, this Court must decide the issues de novo on the record before it. *See Dolphy v. Mantello*, 552 F.3d 236, 239-40 (2d Cir. 2009) (citing *Spears v. Greiner*, 459 F.3d 200, 203 (2d Cir. 2006)); *cf. Wiggins v. Smith*, 539 U.S. 510, 530-31 (2003) (applying a de novo standard to a federal claim not reached by the state court). In so doing, the Court presumes that the state court decided the claim on the merits and the decision rested on federal grounds. *See Harris v. Reed*, 489 U.S. 255, 263 (1989); *Coleman v. Thompson*, 501 U.S. 722, 740 (1991); *see also Jimenez v. Walker*, 458 F.3d 130, 140 (2d Cir. 2006) (explaining the *Harris-Coleman* interplay); *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 810-11 (2d Cir. 2000) (same). This Court gives the presumed decision of the state court the same AEDPA deference that it would give a reasoned decision of the state court. *Harrington v. Richter*, 131 S. Ct. 770, 784-85 (2011) (rejecting the argument that a summary disposition was not entitled to § 2254(d) deference); *Jimenez*, 458 F.3d at 145-46.

## IV. DISCUSSION

A.     Exhaustion

Respondent correctly contends that one of Avery's claims is unexhausted. This Court may not consider claims that have not been fairly presented to the state courts. 28 U.S.C. § 2254(b)(1); *see Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing cases). Exhaustion of state remedies requires the petition to fairly present federal claims to the state courts in order to give

the state the opportunity to pass upon and correct alleged violations of its prisoners' federal rights. *Duncan v. Henry*, 513 U.S. 364, 365 (1995). A petitioner must alert the state courts to the fact that he is asserting a federal claim in order to fairly present the legal basis of the claim. *Id.* at 365-66. An issue is exhausted when the substance of the federal claim is clearly raised and decided in the state court proceedings, irrespective of the label used. *Jackson v. Edwards*, 404 F.3d 612, 619 (2d Cir. 2005). As Respondent notes, Avery raised his claim that the trial court erred in denying the CPL § 440 motion solely on the basis of state law.

This unexhausted claim is procedurally barred. Because Avery's claim is based on the record, the federal nature of his claim could have been raised in his direct appeal but was not; consequently, Avery cannot bring a motion to vacate as to this claim. N.Y. CRIM. PROC. LAW § 440.10(2)(c) ("[T]he court must deny a motion to vacate a judgment when[,] [a]lthough sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to the defendant's unjustifiable failure to take or perfect an appeal . . . ."). Moreover, Avery cannot re-assert this claim on direct appeal because he has already filed the direct appeal and leave application to which he is entitled. *See Grey v. Hoke*, 933 F.2d 117, 120-21 (2d Cir. 1991) Because Avery may not now return to state court to exhaust this claim, the claim may be deemed exhausted but procedurally defaulted from habeas review. *See Ramirez v. Att'y Gen.*, 280 F.3d 87, 94 (2d Cir. 2001).

Despite Avery's failure to exhaust this claim, this Court nonetheless may deny the claim on the merits and with prejudice. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of

habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").  This is particularly true where the grounds raised are meritless.  *See Rhines v. Weber*, 544 U.S. 269, 277 (2005).  Accordingly, this Court declines to dismiss the unexhausted claim solely on exhaustion grounds and will instead reach the merits of the claim as discussed below.

B.      Merits

Claim 1. Ineffective Assistance of Trial Counsel

Avery first argues that his trial counsel "failed to do reasonable investigations, prepare the case for trial, and failed to call available[] witnesses that could have exonerated [Avery] as a matter of law."  He further contends that "[c]ounsel's conduct prejudiced [him] beyond all doubt."

To demonstrate ineffective assistance of counsel under *Strickland v. Washington*, a defendant must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense.  466 U.S. 668, 687 (1984).  A deficient performance is one in which "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment."  *Id.*  The Supreme Court has explained that, if there is a reasonable probability that the outcome might have been different as a result of a legal error, the defendant has established prejudice and is entitled to relief.  *Lafler v. Cooper*, 132 S. Ct. 1376, 1385-86 (2012); *Glover v. United States*, 531 U.S. 198, 203-04 (2001); *Williams*, 529 U.S. at 393-95.  Thus, Avery must show that his trial counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different.  *See Hill v. Lockhart,*

474 U.S. 52, 57 (1985). An ineffective assistance of counsel claim should be denied if the petitioner fails to make a sufficient showing under either of the *Strickland* prongs. *See Strickland*, 466 U.S. at 697 (courts may consider either prong of the test first and need not address both prongs if the defendant fails on one).

New York's test for ineffective assistance of counsel under the state constitution differs slightly from the federal *Strickland* standard. "The first prong of the New York test is the same as the federal test; a defendant must show that his attorney's performance fell below an objective standard of reasonableness." *Rosario v. Ercole*, 601 F.3d 118, 123 (2d Cir. 2010) (citing *People v. Turner*, 840 N.E.2d 123 (N.Y. 2005)). The difference is in the second prong. Under the New York test, the court need not find that counsel's inadequate efforts resulted in a reasonable probability that, but for counsel's error, the outcome would have been different. "Instead, the 'question is whether the attorney's conduct constituted egregious and prejudicial error such that the defendant did not receive a fair trial.'" *Id.* at 123 (quoting *People v. Benevento*, 697 N.E.2d 584, 588 (N.Y. 1998)). "Thus, under New York law the focus of the inquiry is ultimately whether the error affected the 'fairness of the process as a whole.'" *Id.* (quoting *Benevento*, 697 N.E.2d at 588). "The efficacy of the attorney's efforts is assessed by looking at the totality of the circumstances and the law at the time of the case and asking whether there was 'meaningful representation.'" *Id.* (quoting *People v. Baldi*, 429 N.E.2d 400, 405 (N.Y. 1981)).

The New York Court of Appeals views the New York constitutional standard as being somewhat more favorable to defendants than the federal *Strickland* standard. *Turner*, 840 N.E.2d at 126. "To meet the New York standard, a defendant need not demonstrate that the outcome of the case would have been different but for counsel's errors; a defendant need only

demonstrate that he was deprived of a fair trial overall." *Rosario*, 601 F.3d at 124 (citing *People v. Caban*, 833 N.E.2d 213, 222 (N.Y. 2005)). The Second Circuit has recognized that the New York "meaningful representation" standard is not contrary to the federal *Strickland* standard. *Id.* at 124, 126. The Second Circuit has likewise instructed that federal courts should, like the New York courts, view the New York standard as being more favorable or generous to defendants than the federal standard. *Id.* at 125.

Avery's claim must fail, however, even under the more lenient New York standard. First, as both the County Court and Appellate Division noted, "the record reveals that [Avery's] trial counsel made appropriate pretrial motions, participated actively in hearings, and carried out vigorous cross-examination of the People's witnesses, among other things." *Avery*, 915 N.Y.S.2d at 361. The state courts' conclusion that trial counsel rendered meaningful representation that satisfies the constitutional requirements therefore does not contravene or unreasonably apply federal law. *See Rosario*, 601 F.3d at 123.

Moreover, Avery cannot show that counsel's alleged failures were actual deficiencies or that they deprived Avery of a fair trial. Although he does not specify what conduct he challenges in his Petition, Avery claimed on direct appeal that Spears and Clark should have been called as alibi witnesses and that counsel should have conducted a pretrial interview of Aleman. The appellate court rejected these contentions:

> [Avery] contends that, if his trial counsel had interviewed [Aleman], he would have determined that she could not have gotten downstairs in time to see [Avery] running away. However, [Avery's] trial counsel cross-examined [Aleman] in some detail as to her actions before coming downstairs and the extent of her opportunity to see the fleeing men. Further, [Avery] himself testified that he ran away from the scene with Spears, although he denied wearing a red jacket. Thus, nothing in [Aleman's] CPL 440.10 testimony . . . indicates that a pretrial interview would have provided trial counsel with

13

information that would have undermined her trial testimony to an extent demonstrating ineffective assistance.

[Avery] next contends that Spears, if interviewed, would have furnished [Avery] with an alibi by stating that [Avery] was outside the store and walking away from it when Clark shot the victim. Spears made this claim in a 2008 affidavit supporting [Avery's] CPL 440.10 motion; however, it contradicts his own prior statement as well as all of the other information available to defense counsel at the time of trial. A few hours after the crime, Spears told police that after watching [Avery] and Clark enter the store, he walked away and then heard gunshots. On the morning after the crime, [Avery] told police that he was inside the store when the shots were fired; at trial, he testified that he was at the store entrance. Thus, as of the time of the representation, trial counsel had no reason to believe that Spears would state that [Avery] was outside the store or otherwise furnish an alibi.

[Avery] further contends that Spears would have provided defense counsel with information enabling him to impeach the acquaintance they had encountered before the robbery who, according to [Avery], gave false testimony as part of a vengeful effort to wrongfully implicate Spears.[FN4] At [Avery's] trial, the acquaintance testified that Spears asked him several questions about cameras and other people inside the store, that he believed that Spears, [Avery] and Clark intended to do something wrong in the store such as "shoplift, or something of that nature," and that [Avery] was wearing a red jacket. Given the consistency between this testimony and the acquaintance's prior statements—as well as Clark's and [Avery's]—any allegation that Spears could have impeached him or revealed the plot in which he was allegedly engaged is too speculative to serve as a basis for a finding of ineffective assistance of counsel.

> FN4. Notably, when [Avery] was tried, Spears had already been acquitted of involvement in the grocery store crimes.

[Avery's] final claim of ineffective assistance of counsel—that further investigation would have revealed that Clark was lying about [Avery's] involvement—necessarily fails as a result of County Court's well-founded conclusion that Clark's recantation was not credible.

*Avery*, 915 N.Y.S.2d at 360-61 (internal citations and quotation marks omitted).

The Appellate Division's denial of Avery's ineffective assistance of counsel claim was neither contrary to nor an unreasonable application of *Strickland*. *See McKee v. United States*, 167 F.3d 103, 106 (2d Cir. 1999) ("Actions or omissions by counsel that might be considered sound trial strategy do not constitute ineffective assistance, and a court may not use hindsight to

second-guess counsel's tactical choices." (citations and internal quotation marks omitted)).

Accordingly, Avery is not entitled to relief on his ineffective assistance of counsel claim.

Claim 2. Legal Sufficiency of the Evidence

Avery next contends that the "[p]rosecution failed to meet their burden of proof in establishing [Avery's] guilty beyond a reasonable doubt, as the evidence was legally insufficient to convict [him] of murder or attempted robbery." He further asserts that, "[g]iven the best view of all the evidence presented in the court, the evidence could not establish beyond a reasonable doubt[] that [Avery] was guilty of robbery, and surely not murder, as factual[] and actual evidence presented to the court clearly exonerated [him] of committing those crimes."

As an initial matter, on direct appeal the Appellate Division rejected Avery's sufficiency of the evidence claim as unpreserved for appellate review. *See Avery*, 915 N.Y.S.2d at 358. When a state court concludes that a claim is unpreserved for appellate review, this is "an independent and adequate state ground that bars a federal court from granting habeas relief." *Butler v. Cunningham*, 313 F. App'x 400, 401 (2d Cir. 2009) (citing *Coleman*, 501 U.S. at 750); *see also Reid v. Senkowski*, 961 F.2d 374, 377 (2d Cir. 1992).

In any event, Avery's claim is without merit. As articulated by the Supreme Court in *Jackson*, the constitutional standard for sufficiency of the evidence is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in the original); *see McDaniel v. Brown*, 558 U.S. 120, 132-33 (2010) (reaffirming this standard). This Court must therefore determine whether the New York court unreasonably applied *Jackson*. In making this determination, this Court may not usurp the

role of the finder of fact by considering how it would have resolved any conflicts in the evidence, made the inferences, or considered the evidence at trial.  *Jackson*, 443 U.S. at 318-19. Rather, when "faced with a record of historical facts that supports conflicting inferences," this Court "must presume–even if it does not affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of the prosecution, and defer to that resolution."  *Id.* at 326.

It is a fundamental precept of dual federalism that the States possess primary authority for defining and enforcing the criminal law.  *See Engle v. Isaac*, 456 U.S. 107, 128 (1982). Consequently, although the sufficiency of the evidence review by this Court is grounded in the Fourteenth Amendment, it must take its inquiry by reference to the elements of the crime as set forth in state law.  *Jackson*, 443 U.S. at 324 n.16.  A fundamental principle of our federal system is "that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."  *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *see West v. AT&T*, 311 U.S. 223, 236 (1940) ("[T]he highest court of the state is the final arbiter of what is state law.  When it has spoken, its pronouncement is to be accepted by federal courts as defining state law . . . .").  "Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension."  *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 345 (2006) (quoting *Smith v. Philips*, 455 U.S. 209, 221 (1982)) (internal quotation marks omitted).  It is through this lens that this Court must view an insufficiency of the evidence claim.

In this case, to establish second-degree murder, the People had to prove that Avery, acting with another person (Clark), attempted to commit robbery and in the course of and in furtherance of such crime or of immediate flight therefrom, Clark caused the death of a non-

participant to the crime. *See* N.Y. PENAL LAW § 125.25(3). With respect to the attempted robbery charges, the People had to prove that Avery acted as an accomplice to Clark and that Clark engaged in conduct which tended to effect the commission of forcibly stealing property and in the course of the commission of the crime Clark caused serious physical injury to a non-participant, *id.* §§ 110/160.15(1), and was armed with a deadly weapon, *id.* §§ 110/160.15(2).

Here, Avery gave the police a written statement indicating that he needed cash to pay child support and a fine for loitering and that he, Clark, and Spears decided to rob a store. The statement further indicated that all three men were armed with guns that they were going to use for the robbery and that, when the store emptied out, Clark and Avery went in and Spears stayed out as a lookout. Spear's acquaintance testified that Spears asked him if there were people in the store and if the store had cameras. The store owner testified that he heard gunshots and saw two masked men, one of whom was holding a gun. Aleman testified that she also heard the gunshots, came down from her apartment above the store, and saw two young men running from the store entrance.

Avery nonetheless argues that there was insufficient proof of his involvement in the crime, focusing primarily on the lack of credibility of the prosecution's witnesses and lack of corroboration. But this Court is precluded from either re-weighing the evidence or assessing the credibility of witnesses. Under *Jackson*, this Court's role is simply to determine whether there is any evidence, if accepted as credible by the trier of fact, sufficient to sustain conviction. *See Schlup v. Delo*, 513 U.S. 298, 330 (1995). Although it might have been possible to draw a different inference from the evidence, this Court is required to resolve that conflict in favor of the prosecution. *See Jackson*, 443 U.S. at 326. Avery bears the burden of establishing by clear

and convincing evidence that these factual findings were erroneous. 28 U.S.C. § 2254(e)(1). He

has failed to carry such burden. The record does not compel the conclusion that no rational trier

of fact could have found proof that Avery was guilty of felony murder and attempted robbery,

especially considering the double deference owed under *Jackson* and the AEDPA. Avery is

therefore not entitled to relief on this claim.

Claim 3. *Brady* Violation

Avery additionally asserts that the "prosecution failed to disclose that the People's

witness, Gloria Aleman, required an interpreter at the time of giving evidence in this case, and

the People still haven't disclosed who the alleged interpreter was, and the People failed to turn

the witness's statement to police over to the defense."

To constitute a *Brady* violation, "[t]he evidence at issue must be favorable to the accused,

either because it is exculpatory, or because it is impeaching; that evidence must have been

suppressed by the State, either willfully or inadvertently; and prejudice must have ensued."

*Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). On direct appeal, Avery contended that the

withheld evidence constituted favorable *Brady* material because it could have been used to

impeach Aleman's testimony. The appellate court rejected that contention, concluding that

disclosure of Aleman's request for an interpreter "would have done nothing more than to

demonstrate her limited ability to communicate in English, which was already self-evident" and

that the police statement would have "little or no impeachment value" because although it is

"somewhat more detailed than the trial testimony . . . it corresponds accurately to the essentials

of that testimony and contradicts none of it." *Avery*, 915 N.Y.S2d at 359. The appellate court's

determination is reasonable, and Avery therefore fails to show that the withheld evidence constituted favorable *Brady* material.

As the appellate court further recognized, the prosecution's failure to disclose to the defense Aleman's police statement violates the prosecution's obligations under *People v. Rosario*, 173 N.E.2d 881 (N.Y. 1961). Under *Rosario*, codified in CPL § 240.45, the prosecution must turn over to the defendant all written or recorded testimony of any person the prosecutor intends to call as a witness. 173 N.E.2d at 883. *Rosario* claims, however, are state law claims, not founded on either the federal constitution or federal laws, which are not cognizable in a federal habeas proceeding. *See, e.g., Young v. McGinnis*, 411 F. Supp. 2d 278, 329 (E.D.N.Y. 2006); *Randolph v. Warden, Clinton Corr. Facility*, No. 04 Civ. 6126, 2005 WL 2861606, at *5 (S.D.N.Y. Nov. 1, 2005) ("the failure to turn over *Rosario* material is not a basis for habeas relief as the *Rosario* rule is purely one of state law"). Avery therefore cannot prevail on any claim that the prosecution failed to produce mandatory discovery.

<u>Claim 4. Denial of CPL § 440 Motion</u>

Finally, Avery argues that "[t]he court ruling on [his] CPL § 440.10 motion was objectively unreasonable, and [an] unreasonable application of well established Supreme Court law[] on a material of law[] and facts." He contends that "[t]he evidence presented to the court [is] clearly relevant, significant, and clear[] that [Avery] was not guilty of the crimes charged, and the lack of evidence of his guilt. The newly discovered evidence presented a[n] actual[] and factual innocence of [his] guilt worthy of dismissal of the crimes charged, as a matter of law[] and facts."

In his CPL § 440.10 motion, Avery raised a litany of complaints about his trial attorney, arguing that counsel should have undertaken pre-trial investigations and called alibi witnesses which would have uncovered the recantation and additional evidence that was presented during the § 440.10 hearing. As previously discussed, however, Avery fails to show that his trial counsel was ineffective and thus he cannot show that the CPL § 440.10 court's denial on that ground was unreasonable or contrary to federal law.

Construing Avery's *pro se* Amended Petition liberally, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), this Court may discern that Avery asserts a freestanding claim of actual innocence. While a federal habeas petitioner may assert a claim of actual innocence to overcome a procedural bar to review, *Schlup*, 513 U.S. at 326, or to overcome the AEDPA's one-year statute of limitations, *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1928 (2013), the Supreme Court has not resolved whether a non-capital prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence, *McQuiggin*, 133 S.Ct. at 1931; *see House v. Bell*, 547 U.S. 518, 554-55 (2006); *Dist. Attorney's Office v. Osborne*, 557 U.S. 52, 71-72 (2009). The Supreme Court has instead declined to answer the question, noting that where a "[p]etitioner has failed to make a persuasive showing of actual innocence[,] . . . the Court has no reason to pass on, and appropriately reserves, the question whether federal courts may entertain convincing claims of actual innocence." *Herrera v. Collins*, 506 U.S. 390, 427 (1993) (O'Connor, J., concurring). Although the Second Circuit has also not ruled on whether a claim of actual innocence is cognizable on habeas review, *see Friedman v. Rehal*, 618 F.3d 142, 159 (2d Cir. 2010) (citing *Osborne*, 557 U.S. at 71, and noting that whether an actual innocence claim is cognizable is an open question), it has "come close" to granting habeas relief on grounds of

actual innocence, *see DiMattina v. United States*, 949 F. Supp. 2d 387, 417 (E.D.N.Y. 2013) (citing cases).

Assuming, but not deciding, that a freestanding actual innocence claim is cognizable in a § 2254 proceeding, the Supreme Court has described the threshold showing of evidence as "extraordinarily high." *Herrera*, 506 U.S. at 417. "The sequence of the Court's decisions in *Herrara* and *Schlup*—first leaving unresolved the status of freestanding claims and then establishing the gateway standard—implies at the least that *Herrara* requires more convincing proof of innocence than *Schlup*." *House*, 547 U.S. at 555.

Measured against this standard, Avery has fallen short of establishing his actual innocence. Avery's claim is based on the purported recantations of Clark and Aleman, which he contends constitute newly discovered evidence. The Second Circuit has recognized that "due process is violated if a state leaves in place a criminal conviction after a credible recantation of material testimony and the recantation would 'most likely' have changed the outcome." *Quezada v. Smith*, 624 F.3d 514, 521 (2d Cir. 2010) (citing *Sanders v. Sullivan*, 863 F.2d 218, 222 (2d Cir. 1988)). However, "[i]t is axiomatic that witness recantations 'must be looked upon with utmost suspicion.'" *Haouari v. United States*, 510 F.3d 350, 353 (2d Cir. 2007) (quoting *Ortega v. Duncan*, 333 F.3d 102, 107 (2d Cir. 2003)). This rule exists because recantations upset society's interest in the finality of convictions and are very often unreliable and given for suspect reasons. *Id.* The presumption of correctness afforded to state-court findings on federal habeas review applies to "historical facts, that is, recitals of external events and the credibility of the witnesses narrating them." *Smith v. Mann*, 173 F.3d 73, 76 (2d Cir. 1999). Those findings

will be overturned if the material facts were not adequately developed by the state court or if the factual determination is not adequately supported by the record. *Id.*

In this case, the court held an evidentiary hearing on the motion, and Clark was questioned at length about his version of the events as well as his prior statements during his plea allocution and his prior trial testimony. The CPL § 440 court had the opportunity to assess his credibility and demeanor firsthand and subsequently found Clark's recantation testimony not credible and thus rejected it. Likewise, the CPL § 440 court found, and the appellate court agreed, that Aleman did not recant her trial testimony. As both courts noted, the record indicates that Aleman's trial testimony and hearing testimony are consistent as to the critical element that there were two individuals inside the grocery store at the time of the shooting. Therefore, the state court fully developed the material facts through the evidentiary hearing, and the record supports the court's factual findings. Thus, no basis exists to overturn the state court's findings as to either Clark or Aleman's testimony, and neither of the alleged recantations support a claim of actual innocence here.

## V. CONCLUSION

Avery is not entitled to relief on any ground raised in his Amended Petition.

**IT IS THEREFORE ORDERED THAT** the Amended Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability. 28 U.S.C. § 2253(c); *Banks v. Dretke,* 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the

issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)). Any further request for a Certificate of Appealability must be addressed to the Court of Appeals. *See* FED. R. APP. P. 22(b); 2D CIR. R. 22.1.

The Clerk of the Court is to enter judgment accordingly.

Dated: July 2, 2014.

  /s/ James K. Singleton, Jr.
  JAMES K. SINGLETON, JR.
  Senior United States District Judge